# EXHIBIT A

## IN THE CHANCERY COURT FOR BEDFORD COUNTY, TENNESSEE, AT SHELBYVILLE

JAMES E. FARRAR, SR.,         )
THE ESTATE OF JOHN H. NORTON, III,  )
and C. KELLY WILSON           )
                      )
      Plaintiffs,      )    Case No.: __31,724__
                      )
v.                      )
                      )    BEDFORD CO. CHANCERY CT.
AUTO-OWNER'S INSURANCE      )
COMPANY,                )    2017 JUL -7 AM 8: 53
                      )
      Defendant.     )    CURT M. COBB, C.&M.
                      BY:

## COMPLAINT

COME NOW Plaintiffs, **JAMES E. FARRAR, SR., THE ESTATE OF JOHN H. NORTON, III**, and **C. KELLY WILSON**, and, for cause of action against Defendant, **AUTO-OWNERS INSURANCE COMPANY**, hereinafter referred to as *"Auto-Owners"*, would state and aver, as follows:

1. That, at all times material, Plaintiffs were the lawful owners of a commercial building located at 737 Madison Street, Shelbyville, Tennessee, which commercial property, was offered to the general public as commercial rental property.

2. That Auto-Owners is an insuror authorized to do and, at all times material, doing business in the state of Tennessee, soliciting the sale of and providing commercial property insurance through its various agents, including, but not limited to, HB Cowan & Company, 710 North Britain Street, Shelbyville, Tennessee 37160. That, pursuant to its business interests, Auto-Owners, through its aforesaid agent, had insured the subject real property belonging to the Plaintiffs for a number of years prior to January 7, 2014. That, further, by letter dated January 22, 2013, which correspondence is from

Mr. Brett Fisher, HB Cowan & Company, Plaintiffs' policy of insurance on the subject property was renewed for the period from February 25, 2013, through and including February 25, 2014. That a copy of the renewal information is attached hereto as *"Collective Exhibit A"*, and made a part hereof, all of which was applicable under Policy Number 104619-03319303-13.

3. That Plaintiffs aver that, on or about January 7, 2014, Plaintiffs suffered substantial and significant loss to their commercial property located at 737 Madison Street, Shelbyville, Tennessee. That, specifically, their commercial building was irreparably damaged as a result of the freezing and rupturing of the fire protection system located within the subject building. That, with regard to that fire suppression sprinkler system, both the policy of insurance issued to the Plaintiffs and fire code requirements contemplated that a fire suppression sprinkler system, which is directly connected to a water source independent of the principal water supply, would constantly remain on, even if all other utilities were inoperable. That, however, due to extreme cold weather conditions then occurring, said fire suppression sprinkler system froze and burst, releasing colossal amounts of water throughout the structure, resulting in damage to the building that both rendered said building unfit for renting and caused tremendous interior damage to the walls of the building, the ceilings in the building, the electrical system in the building, the heating and cooling systems in the building and the fire suppression sprinkler system itself.

4. That, following the aforementioned event, Plaintiffs gave timely notice of their claim to Defendant's agent, HB Cowan & Company, which timely notification was in writing and dated January 8, 2014. That a copy of said notice is attached hereto as *"Collective*

*Exhibit B*", and made a part hereof. Thereafter, Claim No. 33-154-2014 was assigned to the claim, and Defendant hired United Storm Adjusters, believed to be principally based in Tampa, Florida, but with a satellite office in Nashville, Tennessee, for the purpose of inspecting and adjusting the loss.

5. That, after the work performed by United Storm Adjusters, and due, it is suggested, to the substantial amount of Plaintiffs' claim, Defendant, through its Field Claim Representative, Ms. Dani McClelland, and by letter dated April 30, 2014, attempted to deny coverage based on a highly skewed, but contractually improper, interpretation of certain provisions of the policy of insurance issued by Defendant. In response thereto, counsel for Plaintiffs at that time, by letter to Ms. McClelland dated May 2, 2014, pointed out that her obvious misinterpretation of the subject policy of insurance and her clear attempt wrongfully to deny coverage was not only unwarranted but also unjustified, under all of the facts and circumstances applicable to the claim that Plaintiffs were making. Thereafter, by letter dated May 8, 2014, Ms. McClelland, again, refused to alter the position that she had previously taken on behalf of Defendant. In response thereto and by letter dated May 9, 2014, demand for payment was again made by and on behalf of Plaintiffs, with the additional notification to Defendant that, in the event that it continued unreasonably to fail and to refuse to pay Plaintiffs' claim, subsequent litigation would include an assertion that Defendant had acted in "bad faith" in its handling of the subject claim. By letter dated May 12, 2014, Ms. McClelland reiterated Defendant's denial of Plaintiffs' claim, and, strangely, changed the basis of the denial to another inapplicable provision of the subject policy of insurance. However, and again, Ms. McClelland's skewed interpretation of that provision of the

subject policy was equally unwarranted and contractually improper, further evidencing the "bad faith" of Defendant in its handling of Plaintiffs' claim. That copies of all of the aforementioned correspondences are now attached hereto as "Collective Exhibit C".

6. That, still further, a formal demand for Defendant to adjust and pay Plaintiff's claim or face further litigation, to include a cause of action for "bad faith" denial, was made by letter from Plaintiff's current undersigned counsel on May 5, 2017; however, Defendant has remained steadfast in refusing and failing to fulfill its contractual obligations to cover the losses suffered by Plaintiffs. Instead, by letter from counsel for Defendant dated May 11, 2017, Defendant, with no basis in fact, now asserts that the subject property had been vacant for "greater than sixty (60) days" prior to the date of loss. However, and again, Plaintiffs assert that the property was indeed occupied, as previously indicated in Defendant's letter to Ms. Mclelland dated May 2, 2014, by a renter who was renting the property on a month-to-month basis and that the said renter was present within the property no further in time than around the time of the Christmas holidays just a couple of weeks prior to the loss being incurred. Copies of the two referenced correspondences are attached and marked as "Collective Exhibit D".

7. That, accordingly, Plaintiffs aver that Defendant's unfounded and apparently fabricated contention regarding the property being vacant for more than sixty (60) days further evidences the malfeasance and bad faith behind Defendant's refusal to honor its obligations to Plaintiffs by paying the claims for Plaintiffs' valid and substantial losses.

8. That Plaintiffs further aver that they, and each of them, have fully complied with all of their obligations under Policy Number 104619-03319303-13 sold to them by Defendant. That, however, Plaintiffs allege and aver that Defendant has materially

breached its obligations under the same policy of insurance, including, but not by way of limitation, to timely investigate, to properly adjust and to timely pay Plaintiffs claim that arose on January 7, 2014, out of the event referenced in ¶3 of the Complaint. Respecting Defendant's failures, as aforementioned, Plaintiffs have suffered, and continue to suffer, monetary damages in an amount to be calculated by the Court. Further, Plaintiffs allege that Defendant's failure or refusal to pay Plaintiffs' loss within sixty (60) days after proper demand had been made upon Defendant by Plaintiffs, or on their behalf, Plaintiffs are entitled to an additional twenty-five percent (25%) penalty on that amount for which Defendant is liable to the Plaintiffs, consisting of pre-judgment interest, the expenses associated with this litigation, Plaintiffs' loss of use of the monies to which they are entitled and the attorney fees that they have been required to incur, all as is referenced in Tennessee Code Annotated § 56-7-105.

WHEREFORE, PREMISES SEEN AND CONSIDERED, Plaintiffs pray, as follows:

1. That a copy of the within Summons and Complaint be served on Defendant through the State of Tennessee Department of Commerce and Insurance;

2. That this Court determine the amount of Plaintiffs' original loss due to the event that occurred on January 7, 2014, which amount Plaintiffs generally calculate as approximating $250,000;

3. That Plaintiffs be awarded an additional sum not exceeding twenty-five percent (25%) of the aforesaid sum, to be measured by the additional expense, loss and injury suffered by the Plaintiffs as a result of Defendant's "bad faith", including reasonable attorney fees; and

4. For such other further and general relief to which they may be entitled.

Dated this the ___7th___ day of ___July___, 2017.

Respectfully submitted,

Gregory D. Judkins, BPR #24535
P.O. Box 2235
Shelbyville, TN 37162
931-684-0205
*Attorney for Plaintiffs*

## COST BOND

We are surety for costs not to exceed $500.00.

Gregory D. Judkins



# H. B. COWAN & COMPANY

### INSURANCE & BONDS ... ESTABLISHED 1893

710 NORTH BRITTAIN STREET, SHELBYVILLE, TENNESSEE 37160
MAILING ADDRESS: P.O. BOX 109, SHELBYVILLE, TENNESSEE 37162
PHONE (931) 684-3323 • FAX (931) 684-0907
www.hbcowan.com

January 22, 2013

Mr. Farrar, Mr. Norton, Mr. Wilson, Mr. Shofner
PO Box 37
Shelbyville, TN 37160

Re:   Commercial Property
      02/24/2013 to 02/24/2014

BEDFORD CO. CHANCERY CT.

2017 JUL -7 AM 8: 53

CURT M. COBB, C.&M.

B: _____

Dear Gentelman:

Enclosed is the renewal for your Commercial Property policy.
With the paid in full discount the premium has decreased by $150
this year.  Please review the policy carefully and if you have any
questions or if we need to make any changes, please contact us.

Thank you for your continued business.  With thanks and best
regards.

Sincerely,

H. B. Cowan & Company

Brett Fisher

EXHIBIT
COLLECTIVE
" A "
tabbies

H B COWAN & COMPANY
PO BOX 109
SHELBYVILLE, TN  37162

12-27-2012

Your agency's phone number is (931) 684-3323



**Auto-Owners Insurance**

Life Home Car Business
*The "No Problem" People®*

P.O. BOX 30660, LANSING, MICHIGAN 48909-8160 • 517-323-1200
AUTO-OWNERS INSURANCE COMPANY
AUTO-OWNERS LIFE INSURANCE COMPANY
HOME-OWNERS INSURANCE COMPANY
OWNERS INSURANCE COMPANY
PROPERTY-OWNERS INSURANCE COMPANY
SOUTHERN-OWNERS INSURANCE COMPANY

JAMES E FARRAR SR
&JOHN H NORTON III   C KELLY WILSON
MICHAEL M SHOFNER
124 PUBLIC SQ E
P O DRAWER 37
SHELBYVILLE, TN  37160-3935

You may view your policy online at www.auto-owners.com.
To enroll, use the policy number 03319303          and
Personal ID code G9N 13T 6K4 . Once enrolled, you may
choose to stop receiving the paper policy in the mail.

Thank you for allowing Auto-Owners to handle your insurance needs.

Auto-Owners Insurance Group is financially sound with sufficient reserves to be ranked among the leaders in the in-
dustry for financial security. Our A++ (Superior) rating by the A.M. Best Company signifies that we have the finan-
cial strength to provide the insurance protection you need.

If your policy is an audited policy, the billing of the audit premium will be included in your regular premium billing
account. This premium is due in full upon billing and failure to pay as billed may result in the cancellation of all
policies on the billing account. If you have questions on your audit or about your insurance needs, please contact
your agent at the telephone number shown at the top of this letter.

Auto-Owners Insurance - The "No Problem" People ®

**Pay your premium in full, by the due date, and you will receive a discount as shown below:**

| | |
|---|---|
| Total Policy Premium | $1,913.00 |
| Paid in Full Discount | $183.00 |
| Total Policy Premium If Paid In Full | $1,730.00 |

**\* \* \* \* \* \* \* THIS IS NOT A BILL. \* \* \* \* \* \* \***
**IF ADDITIONAL PREMIUM IS OWED, A BILL WILL BE MAILED SEPARATELY. PLEASE
PAY ANY UNPAID BILLS.**

*~ Serving Our Policyholders and Agents for More Than 90 Years ~*

# NOTIFICATION OF POSSIBLE CHANGES IN COVERAGE FOR TERRORISM

Dear Policyholder:

The Terrorism Risk Insurance Act (including ensuing Congressional actions pursuant to the Act) will expire on December 31, 2014 unless the Federal Government extends the Act. What this means to you is the following:

1. Subject to policy terms and conditions, the enclosed policy will provide insurance coverage for certified acts o terrorism as defined in the Act only until December 31, 2014.

2. A conditional endorsement entitled, Conditional Exclusion Of Terrorism Involving Nuclear, Biological Or Chemical Terrorism (Relating To Disposition Of Federal Terrorism Risk Insurance Act) is enclosed. This conditiona endorsement will only apply if the Act is not extended or if the Act is revised to increase statutory deductibles decrease the federal government's share in potential losses above the statutory deductibles, change the levels terms or conditions of coverage and we are no longer required to make terrorism coverage available and elec not to do so. It will not apply if the Act is simply extended.

3. The conditional endorsement will provide coverage for an incident of terrorism pursuant to the terms and conditions of the policy only if the incident does not involve nuclear, biological or chemical material.

4. A premium charge for the conditional endorsement will be applied effective January 1, 2015. The premium wil be prorated for the remainder of the policy term and is one-half of the current premium charge appearing in the Declarations for TERRORISM - CERTIFIED ACTS. However, it will only be made if the Terrorism Risk Insurance Act (including ensuing Congressional actions pursuant to the Act) is not extend. Revised Declarations will be mailed to you after January 1, 2015.

5. If the Act is extended without any revision, the enclosed policy will continue to provide coverage for certified acts of terrorism. The conditional endorsement will not be activated and the changes in coverage or premium referenced above will not apply.

6. If the Act is extended with revisions or is replaced, and we are required or elect to continue to offer coverage for certified acts of terrorism, we may amend this policy in accordance with the provisions of the revised Act or its replacement.

This notice is for informational purposes only.

If you have any questions concerning your policy or this notice, please contact your Auto-Owners agency.

54846 (1-07)

# NOTICE TO POLICYHOLDER
## EQUIPMENT BREAKDOWN ENDORSEMENT

Dear Policyholder,

Effective with this renewal, the new **Equipment Breakdown Endorsement, 54843 (01-07),** has been added to your policy.

PLEASE REVIEW THIS NEW ENDORSEMENT, 54843 (01-07), AND YOUR POLICY CAREFULLY.

**COVERAGES INCLUDED WITH THIS ENDORSEMENT:**

Covered Property

Covered Property, as it applies to the Equipment Breakdown Endorsement, means commercial property owned by you. Coverage for Covered Property is afforded to the Named Insured up to the limits scheduled in the Declarations. Covered Property also includes personal property of others in your care, custody or control, located within 100 feet of the described premises, up to a limit of $2,500.

Refrigerant Contamination

Refrigerant Contamination, as the result of an "Equipment Breakdown", is covered up to the limits scheduled in the Declarations, with a maximum of $750,000.

Chlorofluorocarbon (CFC) Refrigerants

Coverage for the additional cost to repair or replace Covered Property because of the presence or use of a refrigerant containing CFC substances has been added.

Off Premises Service Interruption

If coverage for Business Income or Extra Expense is provided at the covered location, Off Premises Service Interruption will be covered for losses occurring within 1,000 feet of the premises described in the Declarations.

Data Restoration

Data Restoration coverage as a result of an "Equipment Breakdown" provides the reasonable and necessary cost to research, replace and restore lost information on electronic media and records. Coverage is provided up to a limit of $25,000.

Spoilage

The Spoilage coverage provided under the Equipment Breakdown Endorsement is limited to a maximum of $750,000.

This notice is for informational purposes only. **NO COVERAGE IS PROVIDED BY THIS NOTICE AND IT MUST NOT BE CONSTRUED TO REPLACE OR MODIFY ANY PROVISIONS OF YOUR POLICY OR ENDORSEMENTS. YOUR POLICY CONTAINS THE SPECIFIC TERMS, LIMITS AND CONDITIONS OF COVERAGE, AND SUPERCEDES THIS NOTICE.**

If you have any questions concerning this endorsement, please contact your Auto-Owners agent.

# Owners

55039 (11-87)
Issued  12-27-2012

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

**TAILORED PROTECTION POLICY DECLARATIONS**

Renewal Effective 02-25-2013

| | |
|---|---|
| AGENCY | H B COWAN & COMPANY |
| | 19-0118-00    MKT TERR 044    (931) 684-3323 |

**POLICY NUMBER  104619-03319303-13**

| | |
|---|---|
| INSURED | JAMES E FARRAR SR |
| | &JOHN H NORTON III   C KELLY WILSON |
| | MICHAEL M SHOFNER |
| ADDRESS | 124 PUBLIC SQ E |
| | P O DRAWER 37 |
| | SHELBYVILLE, TN  37160-3935 |

Company
Bill

| POLICY TERM | |
|---|---|
| 12:01 a.m. | 12:01 a.m. |
| 02-25-2013 to 02-25-2014 | |

In consideration of payment of the premium shown below, this policy is renewed.  Please attach this
Declarations and attachments to your policy.  If you have any questions, please consult with your agent.

## COMMON POLICY INFORMATION

BUSINESS DESCRIPTION:  Lro

ENTITY:  Individual

PROGRAM:  Mercantile

| | PREMIUM |
|---|---|
| THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PART(S). | |
| THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT. | |
| COMMERCIAL PROPERTY COVERAGE | $1,437.00 |
| MINIMUM EQUIPMENT BREAKDOWN PREMIUM ADJUSTMENT (CP) | 11.00 |
| COMMERCIAL GENERAL LIABILITY COVERAGE | 465.00 |
| TOTAL | $1,913.00 |
| PAID IN FULL DISCOUNT | $183.00 |
| TOTAL POLICY PREMIUM IF PAID IN FULL | $1,730.00 |

The Paid in Full Discount does not apply to fixed fees, statutory charges or minimum premiums.
The Paid in Full Discount is based on favorable loss experience for the collective group of
policyholders who choose to pay their premiums in full directly to the Company.

FORMS THAT APPLY TO ALL COVERAGE PART SHOWN ABOVE (EXCEPT GARAGE LIABILITY, DEALER'S
BLANKET, COMMERCIAL AUTOMOBILE, IF APPLICABLE)
   55003  (01-87)   IL0017 (11-85)

A Merit Rating Plan Factor of 0.95 Applies.

Countersigned By:  _____

---

### COMMERCIAL PROPERTY COVERAGE

**COVERAGES PROVIDED**

INSURANCE AT THE DESCRIBED PREMISES APPLIES ONLY FOR COVERAGES FOR WHICH A LIMIT OF
INSURANCE IS SHOWN.

---

LOCATION 001

**ADDITIONAL FORMS THIS LOCATION:** None

**LOC 001   BLDG 001** 737 Madison St
                      Shelbyville, TN  37160-3518

**OCCUPIED AS:**  Building

**COVERAGE:** Building                    Limit of Insurance        $263,900

| CAUSES OF LOSS | COINSURANCE | DEDUCTIBLE | RATE | PREMIUM |
|---|---|---|---|---|
| Basic Group I | 80% | $1,000 | 0.329 | $868.00 |
| Basic Group II | 80% | 1,000 | 0.147 | 388.00 |
| Special | 80% | 1,000 | 0.054 | 143.00 |
| Theft | 80% | 1,000 | | Included |

**OPTIONAL COVERAGE:**

Inflation Guard Factor
Building
1.025

| | LIMITS | DEDUCTIBLE | RATE | PREMIUM |
|---|---|---|---|---|
| Equipment Breakdown | See Form 54843 | $1,000 | | $24.00 |

**ADDITIONAL FORMS THIS BUILDING:** 59350  (01-08)  54835  (07-08)  IL0250 (02-89)
    IL0003 (07-02)  CP0090 (07-88)  CP0010 (10-91)  54082  (02-05)  54843  (10-09)

**SECURED INTERESTED PARTIES:**  None

**RATING INFORMATION**

Territory:  020                       County:  Bedford
Program:  Mercantile                  Construction:  Masonry
Class Rate - Building:    0.550       Rated As Sprinklered:  X
                                      PC:    03            Class Code:    0844

TERRORISM - CERTIFIED ACTS    SEE FORM  59350, 54835, 59390              $14.00

LOCATION 001    PREMIUM       $1,437.00

# *Owners*

55040 (11/87)
Issued 12-27-2012

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

**TAILORED PROTECTION POLICY DECLARATIONS**

Renewal Effective 02-25-2013

AGENCY H B COWAN & COMPANY
19-0118-00     MKT TERR 044     (931) 684-3323

**POLICY NUMBER   104619-03319303-13**

INSURED JAMES E FARRAR SR
&JOHN H NORTON III   C KELLY WILSON
MICHAEL M SHOFNER
ADDRESS 124 PUBLIC SQ E
P O DRAWER 37
SHELBYVILLE, TN  37160-3935

Company
Bill

| POLICY TERM | |
|---|---|
| 12:01 a.m. | 12:01 a.m. |
| 02-25-2013 to | 02-25-2014 |

In consideration of payment of the premium shown below, this policy is renewed. Please attach this Declarations and attachments to your policy. If you have any questions, please consult with your agent.

## COMMERCIAL GENERAL LIABILITY COVERAGE

**LIMITS OF INSURANCE**
General Aggregate                                          $2,000,000
   (Other Than Products-Completed Operations)
Products-Completed Operations Aggregate                     2,000,000
Personal Injury And Advertising Injury                      1,000,000
Each Occurrence                                             1,000,000

Commercial General Liability Plus Endorsement

Damage to Premises Rented to You                              300,000 Any One Premises
   (Fire, Lightning, Explosion, Smoke or Water Damage)
Medical Payments                                              10,000 Any One Person
Hired Auto & Non-Owned Auto                                1,000,000 Each Occurrence

Expanded Coverage Details See Form:
   Extended Watercraft
   Personal Injury Extension
   Broadened Supplementary Payments
   Broadened Knowledge Of Occurrence
   Additional Products-Completed Operations Aggregate
   Blanket Additional Insured - Lessor of Leased Equipment
   Blanket Additional Insured - Managers or Lessors of Premises
   Newly Formed or Acquired Organizations Extension
   Blanket Waiver of Subrogation

Twice the "General Aggregate Limit", shown above, is provided at no additional charge for each 12 month period in accordance with form 55300.

**AUDIT TYPE:** Non-Audited

**FORMS THAT APPLY TO THIS COVERAGE:** 59350 (01-08) 55146 (06-04) 55300 (07-05)
IL0250 (02-89) IL0017 (11-85) 55091 (10-08) 55296 (09-09) IL0021 (07-02)

**LOCATION OF PREMISES YOU OWN, RENT OR OCCUPY**

LOC 001  **BLDG** 001 737 Madison St
                 Shelbyville, TN  37160-3518

**TERRITORY:  009   COUNTY:** Bedford

OWNERS INS. CO.

AGENCY H B COWAN & COMPANY
       19-0118-00     MKT TERR 044

Company   **POLICY NUMBER 104619-03319303-13**
Bill

INSURED  JAMES E FARRAR SR

Term 02-25-2013  to 02-25-2014

## COMMERCIAL GENERAL LIABILITY COVERAGE

| Classification | Subline | Premium Basis | Rates | Premium |
|---|---|---|---|---|
| **CODE** 00501 Commercial General Liability Plus Endorsement Included At 7.5% Of The Premises Operation Premium | Prem/Op | Prem/Op Prem Inc | Inc | Inc |
| **CODE** 61212 Building Or Premises - Bank Or Office - Mercantile Or Manufacturing (Lessor's Risk Only) (For-Profit) | Prem/Op Prod/Comp Op | Area 20,000 20,000 | Each 1000 22.797 .217 | $456.00 $4.00 |
| TERRORISM - CERTIFIED ACTS    SEE FORM  59350, 55405, 59390 | | | | $5.00 |

LOCATION  001  PREMIUM     $465.00

**THIS ENDORSEMENT CHANGES THE POLICY.   PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
## (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE  COVERAGE PART
COMMERCIAL GENERAL  LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located

within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2.  As used in this endorsement:

"Hazardous properties" include radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a)  Any "nuclear reactor";

(b)  Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c)  Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d)  Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM
# AND
# IMPORTANT INFORMATION REGARDING TERRORISM RISK INSURANCE COVERAGE

It is agreed:

1. With respect to any one or more certified acts of terrorism, we will not pay any amounts for which we are no responsible because of the application of any provision which results in a cap on our liability for payments fo terrorism losses in accordance with the terms of the federal Terrorism Risk Insurance Act of 2002 (including en suing Congressional actions pursuant to the Act).

2. Certified act of terrorism means any act certified by the Secretary of the Treasury, in concurrence with:

   a. the Secretary of State; and
   b. the Attorney General of the United States

   to be an act of terrorism as defined and in accordance with the federal Terrorism Risk Insurance Act of 200; (including ensuing Congressional actions pursuant to the Act).

3. Under the federal Terrorism Risk Act of 2002 (including ensuing Congressional actions pursuant to the Act) ; terrorist act may be certified:

   a. if the aggregate covered commercial property and casualty insurance losses resulting from the terrorist ac exceed $5 million; and

   b. (1) if the act of terrorism is:

      a) a violent act; or

      b) an act that is dangerous to human life, property or infrastructure; and

      (2) if the act is committed:

      a) by an individual or individuals as part of an effort to coerce the civilian population of the Unitec States; or

      b) to influence the policy or affect the conduct of the United States government by coercion.

All other policy terms and conditions apply.

# IMPORTANT INFORMATION REGARDING TERRORISM RISK
## INSURANCE COVERAGE

The Terrorism Risk Insurance Act of 2002 was signed into law on November 26, 2002. The Act (including ensuing Congressional actions pursuant to the Act) defines an act of terrorism, to mean any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States to be (i) an act of terrorism; (ii) to be a violent act or an act that is dangerous to human life, property or infrastructure; (iii) to have resulted in damage within the United States or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and (iv) to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States government by coercion.

Subject to the policy terms and conditions, this policy provides insurance coverage for acts of terrorism as defined in the Act.

Any coverage for certain commercial lines of property and casualty insurance provided by your policy for losses caused by certified acts of terrorism are partially paid by the federal government under a formula established by federal law. Under this formula, the government will reimburse us for 85% of such covered losses that exceed the statutory deductible paid by us. **You should also know that in the event aggregate insured losses exceed $100 billion during any year the Act is in effect, then the federal government and participating United States insurers that have met their insurer deductible shall not be liable for the payment of any portion of that amount of the loss that exceeds $100 billion. In the event that aggregate insured losses exceed $100 billion annually, no additional claims will be paid by the federal government or insurers.** This formula is currently effective through December 31, 2014.

The premium charge, if any, for this coverage is shown separately on the attached Declarations page. In the event of a certified act of terrorism, future policies also may include a government assessed terrorism loss risk-spreading premium in accordance with the provisions of the Act.

Please contact us if you would like to reject coverage for certified acts of terrorism.

54835 (7-08)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONDITIONAL EXCLUSION OF TERRORISM INVOLVING NUCLEAR, BIOLOGICAL OR CHEMICAL TERRORISM (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT)

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

A. Applicability Of This Endorsement

1. The provisions of this endorsement will apply if and when one of the following situations occurs:

   a. The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act of 2002 (including ensuing Congressional actions pursuant to the Act), terminates; or

   b. The Program is renewed, extended or otherwise continued in effect:

      (1) With revisions that increase insurers' statutory percentage deductible or decrease the federal government's statutory percentage share in potential terrorism losses above such deductible, or that results in a change in the level or terms or conditions of coverage; and

      (2) We are not required by the Program to make terrorism coverage available to you and elect not to do so.

2. When this endorsement becomes applicable in accordance with the terms of A.1.a. or A.1.b. above, it supersedes any terrorism endorsement already endorsed to this policy that addresses "certified acts of terrorism".

3. If this endorsement does NOT become applicable, then any terrorism endorsement already endorsed to this policy, that addresses "certified acts of terrorism", will remain in effect. However, if the Program is renewed, extended or otherwise continued in effect with revisions that change the level or terms or conditions of coverage, and we are required to offer you the revised coverage or to provide the revised coverage to those who previously accepted coverage under the Program, then we will take the appropriate steps in response to the federal requirements.

B. The following definition is added and applies under this endorsement wherever the term terrorism is in quotation marks.
"Terrorism" means activities against persons, organizations or property of any nature:

1. That involve the following or preparation for the following:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright ISO Properties, Inc., 2004

Page 1 of

a. Use or threat of force or violence; or

b. Commission or threat of a dangerous act; or

c. Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

2. When one or both of the following applies:

a. The effect is to intimidate or coerce a government or the civilian population or any segments thereof, or to disrupt any segment of the economy; or

b. It appears that the intent is to intimidate or coerce a government or the civilian population, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

C. The following exclusion is added:

**Exclusion Of "Terrorism"**

We will not pay for loss or damage caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any se-

quence to the loss. This exclusion applies only when one or more of the following are attributed to an incident of "terrorism":

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination;

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material;

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, regardless of whether this endorsement was in effect during the entirety of that time period or not.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.    Page 2 of 2
Copyright ISO Properties, Inc., 2004

55405 (7-08)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONDITIONAL EXCLUSION OF TERRORISM INVOLVING NUCLEAR, BIOLOGICAL OR CHEMICAL TERRORISM (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

**A. Applicability Of This Endorsement**

1. The provisions of this endorsement will apply if and when one of the following situations occurs:

   a. The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act of 2002 (including ensuing Congressional actions pursuant to the Act), terminates; or

   b. The Program is renewed, extended or otherwise continued in effect:

      (1) With revisions that increase insurers' statutory percentage deductible or decrease the federal government's statutory percentage share in potential terrorism losses above such deductible, or that results in a change in the level or terms or conditions of coverage; and

      (2) We are not required by the Program to make terrorism coverage available to you and elect not to do so.

2. When this endorsement becomes applicable in accordance with the terms of A.1.a. or A.1.b. above, it supersedes any terrorism endorsement already endorsed to this policy that addresses "certified acts of terrorism".

3. If this endorsement does NOT become applicable, then any terrorism endorsement already endorsed to this policy, that addresses "certified acts of terrorism", will remain in effect. However, if the Program is renewed, extended or otherwise continued in effect with revisions that change the level or terms or conditions of coverage, and we are required to offer you the revised coverage or to provide revised coverage to those who previously accepted coverage under the Program, then we will take the appropriate steps in response to the federal requirements.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.     Page 1 of 2
Copyright ISO Properties, Inc., 2004

B. The following definition is added and applies under this endorsement wherever the term terrorism is enclosed in quotation marks.

"Terrorism" means activities against persons, organizations or property of any nature:

1. That involve the following or preparation for the following:

   a. Use or threat of force or violence; or

   b. Commission or threat of a dangerous act; or

   c. Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

2. When one or both of the following applies:

   a. The effect is to intimidate or coerce a government or the civilian population or any segments thereof, or to disrupt any segment of the economy; or

   b. It appears that the intent is to intimidate or coerce a government or the civilian population, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

C. The following exclusion is added:

**Exclusion Of "Terrorism"**
We will not pay for "bodily injury", "property damage", "personal injury" or "advertising injury" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". All "bodily injury", "property damage", "personal injury" or "advertising injury" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. This exclusion applies only when one or more of the following are attributed to an incident of "terrorism":

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination;

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material;

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, regardless of whether this endorsement was in effect during the entirety of that time period or not.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.    Page 2 of 2
Copyright ISO Properties, Inc., 2004

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

    BOILER AND MACHINERY COVERAGE PART
    CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
    COMMERCIAL AUTOMOBILE COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COMMERCIAL INLAND MARINE COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    CRIME AND FIDELITY COVERAGE PART
    EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
    FARM COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    PROFESSIONAL LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

Copyright, Insurance Services Office, Inc., 1983
Copyright, ISO Commercial Risk Services, Inc., 1983

IL 00 03 07 02

Page 1 of 1

* * * Communication Result Report ( Jan. 8. 2014 6:04PM ) * * *

1)
2)

Date/Time: Jan. 8. 2014 6:03PM

| File No. Mode | Destination | Pg(s) | Result | Page Not Sent |
|---|---|---|---|---|
| 3812 Memory TX | 9-6840907 | P. 2 | OK | |

Reason for error
  E. 1) Hang up or line fail
  E. 3) No answer
  E. 5) Exceeded max. E-mail size

  E. 2) Busy
  E. 4) No facsimile connection

## THE NORTON LAW FIRM, P.C.
AN ASSOCIATION OF ATTORNEYS
NORTONLAWFIRM@LIVE.COM

JOHN H. NORTON, III
GREGORY H. JUDKINS
ALICIA N. NAPIER

134 EAST SIDE SQUARE
P. O. DRAWER 37
SHELBYVILLE, TN 37160

ARLENE HERNANDEZ, PARALEGAL
LISA SMITH, BOOKKEEPER

TELEPHONE (931) 684-4534
FACSIMILE (931) 685-0065

LARRY P. SHAVERS, FIRM INVESTIGATOR

### FACSIMILE TRANSMISSION

TO: Attn: Mr. Brad McGee
    H.B. Cowan & Company

FAX NO.: (931) 684-0907

DATE: January 8, 2014

FROM: Hon. John H. Norton, III/ Arlene A. Hernandez

FAX NO.: (931) 685-0065

PHONE NO.: (931) 684-4824

SUBJECT: Shofner, Norton, Farrar & Wilson claim
         737 Madison Street, Shelbyville, Tennessee

MESSAGE: Please see attached correspondence.

BEDFORD CO. CHANCERY CT.

2017 JUL -7 AM 8: 54

CURT M. COBB, C. &M.

BY

NUMBER OF PAGES, INCLUDING COVER PAGE: 2

This facsimile contains very console privileged and confidential information intended only for the use of the individual or entity named above. If the sender of this message is not the intended recipient or the employee or agent responsible to deliver it to the intended recipient, that person is hereby notified that any dissemination, distribution or copying of this communication is prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us at the above address via the U. S. Postal Service. Thank you for your cooperation and assistance.

EXHIBIT
COLLECTIVE
"B"

# THE NORTON LAW FIRM, P.C.

AN ASSOCIATION OF ATTORNEYS

NORTONLAWFIRM@LIVE.COM

JOHN H. NORTON, III
GREGORY D. JUDKINS
ALICIA N. NAPIER

ARLEEN HERNANDEZ, PARALEGAL
LISA SMITH, BOOKKEEPER

LARRY P. SHAVERS, FIRM INVESTIGATOR

124 EAST SIDE SQUARE
P. O. DRAWER 37
SHELBYVILLE, TN 37160

TELEPHONE (931) 684-4824
FACSIMILE (931) 685-0065

# FACSIMILE TRANSMISSION

**TO:**        **Attn: Mr. Brad McGee**
                  **H.B. Cowan & Company**

**FAX NO.:**   **(931) 684-0907**

**DATE:**      **January 8, 2014**

**FROM:**      **Hon. John H. Norton, III/ Arleen A. Hernandez**

**FAX NO.:**   **(931) 685-0065**

**PHONE NO.:** **(931) 684-4824**

**SUBJECT:**   *Shofner, Norton, Farrar & Wilson claim*
                  *737 Madison Street, Shelbyville, Tennessee*

**MESSAGE:**   **Please see attached correspondence.**

# NUMBER OF PAGES, INCLUDING COVER PAGE: __2__

This facsimile message may contain privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient or the employee or agent responsible to deliver it to the intended recipient, that person is hereby notified that any dissemination, distribution or copying of this communication is prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us at the above address via the U. S. Postal Service. Thank you for your cooperation and assistance.

# THE NORTON LAW FIRM, P.C.

A PROFESSIONAL CORPORATION
ONE ON THE SQUARE
P.O. DRAWER 37
SHELBYVILLE, TENNESSEE 37162

TELEPHONE (931) 684-4824    TELECOPIER (931) 685-0065
E-MAIL  nortonlawfirmpc@bellsouth.net

JOHN H. NORTON, III
GREGORY D. JUDKINS
ALICIA (ALIE) N. NAPIER

ARLEEN HERNANDEZ - PARALEGAL
LISA SMITH, FINANCIAL OFFICER

LARRY P. SHAVERS, FIRM INVESTIGATOR

January 8, 2014

*Via Facsimile ONLY to: (931) 684-0907*
Mr. Brad McGee
H.B. Cowan & Company
P.O. Box 109
Shelbyville, TN 37162

RE:    Shofner, Norton, Farrar and Wilson claim
       *737 Madison Street, Shelbyville, Tennessee*

Dear Brad:

This will follow our conversation today regarding the captioned real property and building located at 737 Madison Street, Shelbyville, Tennessee.

As I explained, at about 3:15 p.m., this afternoon, Mr. Farrar called me on my cellphone to advise that there was a water-related problem at our property. Mr. Farrar was *en route* to the property when he called me. As I understand it, water pipes, including, possibly, sprinkler pipes, froze and burst, resulting in significant structural and water damage.

While I have not personally seen what happened, I did contact my Office Manager, Ms. Lisa Smith, and I learned that that real property, together with improvements, is insured by your Company. Therefore, I would appreciate your initiating the claims process, so that necessary repairs can be expeditiously made. Further, I have now spoken with Mr. Farrar, again, and he is going to be contacting you, directly, to discuss how next to proceed.

Should you have any questions, please do not hesitate to contact either me or Mr. Farrar.

With best regards.

Very truly yours,

THE NORTON LAW FIRM, P.C.,

John H. Norton, III

DICTATED BUT NOT READ

JHN/aah

Xc:    Mr. James Farrar (*Via Facsimile ONLY*)



Auto-Owners Insurance Company
Auto-Owners Life Insurance Company
Home-Owners Insurance Company
Owners Insurance Company
Property-Owners Insurance Company
Southern-Owners Insurance Company

**BRANCH CLAIM OFFICE**
**5410 Virginia Way • P.O. Box 517**
**Brentwood, Tennessee 37024-0517**
**615-373-5200   FAX 615-661-4654**
**WWW.AUTO-OWNERS.COM**

April 30, 2014

James Farrar
124 Public Sq. E
Shelbyville, TN 37160

**COVERAGE POSITION**

**CERTIFIED MAIL - RETURN RECEIPT REQUESTED**

Re:   Claim No:     33-154-2014
      Date of Loss: 1/7/2014
      Loss Location:737 Madison St., Shelbyville, TN

On January 8, 2014, a claim was submitted under policy number 03319303. It is our understanding that a pipe at the above location froze and caused subsequent water damage.

We hired United Storm Adjusters to inspect this loss for us. They have advised that this building was vacant when the loss occurred and you were not maintaining heat at the time.

We have concluded our investigation of the above described incident and believe that we have gathered enough information to make an initial coverage determination at this time.  We have determined no coverage available under your policy. The determination of no coverage of your claim is due to the information that we have gathered during our investigation and then based upon lack of coverage described under the policy by the following reasons:

Please refer to the Causes of Loss Form 54082 for Commercial Property:

BEDFORD CO. CHANCERY CT.

2017 JUL -7  AM 8: 54

CURT M. COBB, C.& M.

**EXCLUSIONS**                                               BY: _____

   **2.** We will not pay for loss or damage caused by or resulting from any of the following:

         **g.** Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

               **(1)** You do your best to maintain heat in the building or structure; or

               **(2)** You drain the equipment and shut off the supply if the heat is not maintained.

EXHIBIT
Collective
" C "

Serving Our Policyholders and Agents for More Than 95 Years

Heat was not maintained in the building therefore there is not any coverage for this loss under your policy.

This correspondence is not intended to be an exhaustive statement of Auto-Owners' position concerning its coverages under the policy. Auto-Owners' coverage impressions will be based on the policy, the information you provide, and Auto-Owners' investigation. If you disagree, if there is any additional information you believe to be relevant to the question of coverage, or if you believe that the information upon which Auto-Owners relies is not accurate, please advise us of that and forward the additional relevant information which you believe we should review.

If you have any questions or disagree with any aspect of our findings please respond to this letter within fourteen (14) days.

All rights, terms, conditions, and exclusions in your policy are in full force and effect and are completely reserved.

Respectfully yours,

Auto-Owners Insurance Company

Dani McClelland, AIC, AINS
Field Claim Rep.

✳ ✳ ✳ Communication Result Report ( May. 2. 2014 3:35PM ) ✳ ✳ ✳

1}
2}

Date/Time: May. 2. 2014 3:28PM

| File No. | Mode | Destination | Pg(s) | Result | Page Not Sent |
|---|---|---|---|---|---|
| 4188 | Memory TX | 9-16156614654 | P. 5 | OK | |
| | | 9-6840907 | | OK | |
| | | 9-6845894 | | OK | |

```
Reason for error
  E. 1) Hang up or line fail          E. 2) Busy
  E. 3) No answer                     E. 4) No facsimile connection
  E. 5) Exceeded max. E-mail size
```

THE NORTON LAW FIRM, P.C.
AN ASSOCIATION OF ATTORNEYS
NORTONLAWFIRMSLIVE.COM

JOHN H. NORTON, III
GREGORY D. JORDANS
ALICIA M. MAPES

134 EAST SIDE SQUARE
P. O. DRAWER 37
SHELBYVILLE, TN 37162

ARLEEN HERNANDEZ, PARALEGAL
LISA SMITH, BOOKKEEPER

TELEPHONE (931) 684-4724
FACSIMILE (931) 685-0565

LARRY P. SHAVER, FIRM INVESTIGATOR

## **URGENT & TIME-SENSITIVE**
### FACSIMILE TRANSMISSION

TO:        Attn.: Ms. Dani McClelland, AIC, AINS, Field Claim Rep.
           Auto-Owners Insurance

FAX NO.:   (615) 661-4654

XC TO:     Mr. Brad McGee
           H.D. Cowen & Company

FAX NO.:   (931) 684-0907

TO:        Mr. James Farrar

FAX NO.:   (931) 684-5894

DATE:      May 2, 2014

FROM:      Hon. John H. Norton, III/ Arleen A. Hernandez

FAX NO.:   (931) 685-0565

PHONE NO.: (931) 684-4824

SUBJECT:   Claim No. 33-154-2014

MESSAGE:   Please see attached correspondence; the same will follow via U.S.
           Mail.

NUMBER OF PAGES, INCLUDING COVER PAGE:  5

This facsimile message may contain privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient or the employee or agent responsible to deliver it to the intended recipient, that person is hereby notified that any dissemination, distribution or copying of this communication is prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us at the above address via the U.S. Postal Service. Thank you for your cooperation and assistance.

# THE NORTON LAW FIRM, P.C.
### AN ASSOCIATION OF ATTORNEYS
### NORTONLAWFIRM@LIVE.COM

JOHN H. NORTON, III
GREGORY D. JUDKINS
ALICIA N. NAPIER

ARLEEN HERNANDEZ, PARALEGAL
LISA SMITH, BOOKKEEPER

LARRY P. SHAVERS, FIRM INVESTIGATOR

124 EAST SIDE SQUARE
P. O. DRAWER 37
SHELBYVILLE, TN 37160

TELEPHONE (931) 684-4824
FACSIMILE (931) 685-0065

# **URGENT & TIME-SENSITIVE**
## FACSIMILE TRANSMISSION

**TO:**      **Attn.: Ms. Dani McClelland, AIC, AINS, Field Claim Rep.**
                **Auto-Owners Insurance**

**FAX NO.:**    **(615) 661-4654**

**XC TO:**      **Mr. Brad McGee**
                **H.B. Cowan & Company**

**FAX NO.:**    **(931) 684-0907**

**TO:**         **Mr. James Farrar**
**FAX NO.:**    **(931) 684-5894**

**DATE:**      **May 2, 2014**

**FROM:**     **Hon. John H. Norton, III/ Arleen A. Hernandez**

**FAX NO.:**    **(931) 685-0065**

**PHONE NO.:**    **(931) 684-4824**

**SUBJECT:**     **Claim No. 33-154-2014**

**MESSAGE:**     **Please see attached correspondence; the same will follow via U.S. Mail.**

# NUMBER OF PAGES, INCLUDING COVER PAGE: __5__

This facsimile message may contain privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient or the employee or agent responsible to deliver it to the intended recipient, that person is hereby notified that any dissemination, distribution or copying of this communication is prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us at the above address via the U. S. Postal Service. Thank you for your cooperation and assistance.

**THE NORTON LAW FIRM, P.C.**

A PROFESSIONAL CORPORATION
ONE ON THE SQUARE
P.O. DRAWER 37
SHELBYVILLE, TENNESSEE 37162

TELEPHONE (931) 684-4824   TELECOPIER (931) 685-0065
E-MAIL  nortonlawfirmpc@bellsouth.net

JOHN H. NORTON, III
GREGORY D. JUDKINS
ALICIA (ALIE) N. NAPIER

LARRY P. SHAVERS, FIRM INVESTIGATOR

ARLEEN HERNANDEZ - PARALEGAL
LISA SMITH, FINANCIAL OFFICER

May 2, 2014

***Via U.S. Mail & Facsimile to: (615) 661-4654***
Ms. Dani McClelland, AIC, AINS
Field Claim Representative
Auto-Owners Insurance
5410 Virginia Way
P.O. Box 517
Brentwood, TN 37024-0517

RE:    **Claimants:**    **James Farrar, John H. Norton, III, Michael Shofner and C. Kelly Wilson**
        **Claim No.:**    **33-154-2014**
        **Date of Loss:**    **January 7, 2014**
        **Location of Loss: 737 Madison Street, Shelbyville, TN**

Dear Ms. McClelland:

This will acknowledge receipt of your certified mailing dated April 30, 2014, received by us on May 1, 2014. Further, while your correspondence was directed to Mr. James Farrar, he is only one of the four property owners that hold an interest in the subject real property and improvements, and the letter was received with this firm's regular mail, since it was addressed to 124 Public Square East, our law office's physical address. You should also be aware that two of the four property owners in this instance are attorneys, *i.e.*, Hon. C. Kelly Wilson and me.

Your letter begins with the following statement:

"*On January 8, 2014, a claim was submitted under policy number 03319303. It is our understanding that <u>a pipe at the above location froze</u> and caused subsequent water damage.*"

Your letter goes on to say that, "*[W]e hired United Storm Adjusters to inspect this loss for us. They have advised that this building was vacant when the loss occurred and [that] you were not maintaining heat at the time.*"

Without seeming flippant, the foregoing assertions by your Company speak either to one of two situations. First, your Company did not thoroughly examine the information provided to you by United Storm Adjusters, including the extensive materials assembled by Mr. Jay Sturms, Property Field Adjuster. Second, and, alternatively, your Company thoroughly examined those materials and has arbitrarily and intentionally, and in bad faith, denied our claim. In either instance, I would respectfully suggest that your Company reexamine the claim.

I am very familiar with the policy of insurance that covers the building in which I own an undivided one-fourth (¼) interest. I am particularly familiar with the portion of the policy that your Company cited in an effort to suggest a lack of coverage. In this regard, I was made aware, from conversations both with Mr. Farrar and with Mr. Brad McGee, H.B. Cowan & Company, that your Company might attempt to escape responsibility for our extensive damages based on a contention that we did not exercise our "best efforts" to maintain heat to the building or structure. In this regard, I want you to understand that this particular building had been rented to a tenant, Ms. Vivian Rodriguez Salas, on a month-to-month basis, and we were under the understanding that the tenant was still in occupancy thereof on the date of the loss. Further, as part of our month-to-month tenancy arrangement with Ms. Salas, she was to pay all utilities, and she was to keep the premises in good order and repair. There was no <u>written</u> lease agreement, and the period of the tenancy was not precisely defined, since Ms. Salas had indicated to us that she wanted to see how well her business performed, prior to entering into a formal lease arrangement. I also believe that you will come to understand that both Mr. Farrar and I believed that Ms. Salas was still occupying the premises in January 2014, particularly since Mr. Farrar had been by there as recently as during the Christmas holidays and saw lights on in the building.

Having said this, however, your efforts to rely on sub-paragraph (2)(g) of the Causes of Loss Form 54082 are seriously misplaced for one simple reason. Even if the heat in the building was not turned on, and even if the water was "shut off", the loss that we sustained was beyond our control, and that fact is envisioned by the policy language. Specifically, the exclusionary language that you referenced <u>does not</u> apply where the damage results from a rupture of the <u>fire protective system</u>. In this regard, both your policy language and fire code requirements contemplate that a fire suppression sprinkler system, which is directly connected to a water source independent of the principal water supply, will constantly remain on, even if all other utilities are inoperable. That is the law, and that scenario is directly envisioned by the exception language under sub-paragraph (2)(g).

2

In this regard, and that is why I referenced the reports and other information generated by Mr. Sturms, when Mr. Sturms initially visited the building, he immediately realized that the source of all of our damage was not a "water pipe", but, rather, was a significant and multi-location rupture of the fire protective system. With respect to that system, the owners of 737 Madison Street, Shelbyville, Tennessee, remodeled the interior of the structure during, I believe, 2012. When we were conducting that remodel, we were inspected by officials with the local fire department and the State Fire Marshalls' Office. We were told by these officials that we must replace the then rather aged fire protective system, which, of course, we had not anticipated, and we were required to expend a significant, additional amount of money on that new system. In fact, we had to complete this aspect of the renovation before the authorities would allow us to begin re-renting the structure. It was this fire protective system that froze and burst, at multiple positions along the system, and it was the gallons and gallons and gallons and gallons of water that flowed into the building that caused approximately $200,000 in damage.

You should also be aware that, during Mr. Sturms' adjusting this loss, he had several conversations with Mr. Farrar. During, I believe, his last conversation, he indicated to Mr. Farrar that, due to the extensive damage to the fire protective system, and the uncertainty of the direct costs of repairing the same, he would suggest that that damage be handled by a separate claim. In other words, Mr. Strum observed and photographed the number of ruptures in the lines and the various damaged sprinkler-heads. He also realized that repairing the system would require, essentially, making repairs, testing the system, making additional repairs, testing the system, etc... Therefore, he knew that he was unable properly to suggest a true repair cost at the time of his evaluation, and he also knew that this repair/test method would have to be conducted in order to get the system back up to code and fully operational. That is why I suggest that someone with your Company "dropped the ball" and failed to review those records.

From a practical perspective, I also want to add this...When a primary water supply is shut off, there will be a small amount of water left in the piping. Customarily, because all of the owners of this building hold extensive interests in both commercial and residential rental properties, we know how to protect against "frozen pipes". Stated differently, when the principal water supply is turned off, it is customary for us either to flush the pipes to remove the small residual quantity of water or simply to place anti-freeze in drains, commodes, etc., which will flow down into the pipes to prevent freezing. While neither of these methods provide 100% certainty, and while we have all experienced "frozen pipes", the amount of damage from the residual water is always minimal. In this instance, however, there were gallons upon gallons upon gallons of water that streamed through the ruptured fire protective system, and Mr. Farrar, in fact, had to call the City to come out and shut off the system's water supply on the date of the loss. That is the water that caused the $200,000 or so in damage to the interior of our commercial building.

Finally, I realized, last week, that a proper Proof of Loss had not been submitted to your Company. In this regard, Mr. Farrar, who has around four hundred (400) units of property insured with your Company, thought that he and Mr. McGee had previously met this requirement. It seems, however, that, because Mr. Farrar sustained damage to several of his rental units, other than this building, and he had, through working with Mr. McGee, filed several Proof of Loss forms, he thought that he had filed a form on this property. He immediately met with Mr. Clanton, and that form was, presumptively, then properly filed with your Company, which I assume triggered your letter dated April 30, 2014.

In closing, I would respectfully suggest that your Company reevaluate its position on denying coverage for this claim. While I cannot hold your Company responsible for the losses that we have sustained after January 7, 2014, and before your Company properly received the Proof of Loss form, I can now hold your Company responsible for any further loss/damage that we suffer by reason of your wrongful refusal to pay a valid claim. Further, you will have ten (10) business days from the date of this letter to properly reinvestigate this matter and to begin serious discussions about honoring your contractual obligations.

Very truly yours,

THE NORTON LAW FIRM, P.C.,

John H. Norton, III

JHN/aah

Xc:   Mr. James Farrar
      Hon. C. Kelly Wilson
      Mr. Michael Shofner
      Mr. Brad McGee, H.B. Cowan & Company



Auto-Owners Insurance Company
Auto-Owners Life Insurance Company
Home-Owners Insurance Company
Owners Insurance Company
Property-Owners Insurance Company
Southern-Owners Insurance Company

**Auto-Owners Insurance**
Life Home Car Business
*The No Problem People®*

**BRANCH CLAIM OFFICE**
**5410 Virginia Way • P.O. Box 517**
**Brentwood, Tennessee 37024-0517**
**615-373-5200   FAX 615-661-4654**
**WWW.AUTO-OWNERS.COM**

May 8, 2014

The Norton Law Firm, P.C.
Attn: John H. Norton
PO Box 37
Shelbyville, TN 37162

RECEIVED
MAY - 9 2014
THE NORTON LAW FIRM

Re:    Our Insured:   James Farrar
       Date of Loss:  1/7/2014
       Claim No:      33-154-2014
       Loss Location: 737 Madison St.., Fayetteville, TN

Dear Mr. Norton:

We are in receipt of your correspondence dated May 2, 2014, in which you disagree with our position of no coverage for this loss. Please be advised that our position remains unchanged.

If you have any documentation you would like for us to review that shows heat was being maintained in the building, please send it to us at your earliest convenience.

Thank you,

Dani McClelland

Dani McClelland
Field Claim Representative

Case 4:17-cv-00039-CHS Serving Policyholders and Agents for More Than 95 Years Page 39 of 54   PageID #: 42

P. 1

Date/Time: May. 9. 2014  4:00PM

| File No. | Mode | Destination | Pg(s) | Result | Page Not Sent |
|---|---|---|---|---|---|
| 4201 | Memory TX | 9~16156614654 | P.  3 | OK | |
| | | 9~6845894 | | OK | |
| | | 9~6846442 | | OK | |

Reason for error
E. 1) Hang up or line fail          E. 2) Busy
E. 3) No answer                     E. 4) No facsimile connection
E. 5) Exceeded max. E-mail size

**THE NORTON LAW FIRM, P.C.**
AN ASSOCIATION OF ATTORNEYS
NORTONLAWFIRM@LIVE.COM

JOHN N. NORTON, III                         104 EAST SIDE SQUARE
GREGORY D. JERKINS                          P.O. DRAWER 37
ALEXA N. NAPER                              SHELBYVILLE, TN 37160

ARLENE HERNANDEZ, PARALEGAL                 TELEPHONE (931) 684-4124
LISA SMITH, BOOKKEEPER                       FACSIMILE (931) 618-0063
LARRY P. SEAVERS, FIRM INVESTIGATOR

**FACSIMILE TRANSMISSION**

TO:        Attn.: Ms. Dani McClelland, AIC, AINS, Field Claim Rep.
           Auto-Owners Insurance
FAX NO.:   (615) 661-4654

TO:        Mr. James Farror
FAX NO.:   (931) 684-5894

TO:        Hon. C. Kelly Wilson
FAX NO.:   (931) 684-6442

DATE:      May 9, 2014

FROM:      Hon. John H. Norton, III/ Arlene A. Hernandez

FAX NO.:   (931) 685-0065

PHONE NO.: (931) 684-4824

SUBJECT:   Claim No. 33-154-2014

MESSAGE:   Please see attached correspondence.

NUMBER OF PAGES, INCLUDING COVER PAGE: **3**

This facsimile message may contain privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient or the employee or agent responsible to deliver it to the intended recipient, that person is hereby notified that any dissemination, distribution or copying of this communication is prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us at the above address via the U. S. Postal Service. Thank you for your cooperation and assistance.

# THE NORTON LAW FIRM, P.C.

AN ASSOCIATION OF ATTORNEYS
NORTONLAWFIRM@LIVE.COM

JOHN H. NORTON, III
GREGORY D. JUDKINS
ALICIA N. NAPIER

ARLEEN HERNANDEZ, PARALEGAL
LISA SMITH, BOOKKEEPER

LARRY P. SHAVERS, FIRM INVESTIGATOR

124 EAST SIDE SQUARE
P. O. DRAWER 37
SHELBYVILLE, TN 37160

TELEPHONE (931) 684-4824
FACSIMILE (931) 685-0065

## FACSIMILE TRANSMISSION

**TO:** **Attn.: Ms. Dani McClelland, AIC, AINS, Field Claim Rep.**
**Auto-Owners Insurance**

**FAX NO.:** **(615) 661-4654**

**TO:** **Mr. James Farrar**
**FAX NO.:** **(931) 684-5894**

**TO:** **Hon. C. Kelly Wilson**
**FAX NO.:** **(931) 684-6442**

**DATE:** **May 9, 2014**

**FROM:** **Hon. John H. Norton, III/ Arleen A. Hernandez**

**FAX NO.:** **(931) 685-0065**

**PHONE NO.:** **(931) 684-4824**

**SUBJECT:** **Claim No. 33-154-2014**

**MESSAGE:** **Please see attached correspondence.**

## NUMBER OF PAGES, INCLUDING COVER PAGE: _3_

This facsimile message may contain privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient or the employee or agent responsible to deliver it to the intended recipient, that person is hereby notified that any dissemination, distribution or copying of this communication is prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us at the above address via the U. S. Postal Service. Thank you for your cooperation and assistance.

# THE NORTON LAW FIRM, P.C.

### A PROFESSIONAL CORPORATION
ONE ON THE SQUARE
P.O. DRAWER 37
SHELBYVILLE, TENNESSEE 37162

TELEPHONE (931) 684-4824    TELECOPIER (931) 685-0065
E-MAIL  nortonlawfirmpc@bellsouth.net

JOHN H. NORTON, III
GREGORY D. JUDKINS
ALICIA (ALIE) N. NAPIER

ARLEEN HERNANDEZ - PARALEGAL
LISA SMITH, FINANCIAL OFFICER

LARRY P. SHAVERS, FIRM INVESTIGATOR

May 9, 2014

*Via Facsimile ONLY to: (615) 661-4654*
Ms. Dani McClelland, AIC, AINS
Field Claim Representative
Auto-Owners Insurance
5410 Virginia Way
P.O. Box 517
Brentwood, TN 37024-0517

RE:   Claimants:      **James Farrar, John H. Norton, III, Michael Shofner
                       and C. Kelly Wilson**
      Claim No.:      **33-154-2014**
      Date of Loss:   **January 7, 2014**
      Location of Loss: **737 Madison Street, Shelbyville, TN**

Dear Ms. McClelland:

This will acknowledge receipt of your letter dated May 8, 2014, concerning your Company's "unchanged" position. In this regard, if, despite the extensive information that was previously provided to you and your Company, your Company is unwilling to revisit the issue of liability, then we simply have nothing further to discuss. I will again, however, remind you that that position is further evidence of your Company's "bad faith" handling of this matter.

In closing, I want to make one other observation. If you will examine the caption of your correspondence, it is quite evident that your Company is either incapable of or unwilling to fully understand the facts and circumstances of a given claim. I say this because that caption refers to the "loss location". Our commercial building that was irreparably damaged as a result of the freezing and rupturing of the fire protection system is located here in <u>Shelbyville</u>, Tennessee, <u>not</u> in Fayetteville, Tennessee. Perhaps, if you will send your adjuster to the correct building, you may decide that you have confused our building with <u>some</u> building located in a town that is 26.5 miles away from the <u>actual</u> location of the loss related to Claim No. 33-154-2014. Please also remember that your letter of May 8, 2014, will be one of the principal exhibits that will be offered in litigation to support our obvious "bad faith" claim. Moreover, and just so that you will understand, a "bad faith" claim entitles the policyholders to up to an additional 25% of the amount of the claim when an insurance carrier wrongfully and improperly denies a valid claim.

The next communication that your Company will receive from the policyholders on this claim will be a copy of the <u>Complaint</u> that we will be filing, together with copies of our supporting documentation from experts.

Very truly yours,

THE NORTON LAW FIRM, P.C.,

John H. Norton, III

*JHN/aah*

Xc:    Mr. James Farrar
       Hon. C. Kelly Wilson
       Mr. Michael Shofner
       Mr. Brad McGee, H.B. Cowan & Company

2





Auto-Owners Insurance Company
Auto-Owners Life Insurance Company
Home-Owners Insurance Company
Owners Insurance Company
Property-Owners Insurance Company
Southern-Owners Insurance Company

**BRANCH CLAIM OFFICE**
5410 Virginia Way - P.O. Box 517
Brentwood, Tennessee 37024-0517
615-373-5200   FAX 615-661-4654
WWW.AUTO-OWNERS.COM

May 12, 2014

**VIA Fax: 931-685-0065**

The Norton Law Firm
Attn: John Norton
PO Box 37
Shelbyville, TN 37160

Re:  Claim No:        33-154-2014
     Our Insured:     James Farrar
     Loss Location:   737 Madison St., Shelbyville, TN

Dear Mr. Norton:

Thank you for speaking with me today regarding this claim.

The policy does not provide coverage for damage caused by the freezing of a sprinkler system if the building has been vacant for 60 or more consecutive days unless the insured has protected the system against freezing.

Please refer to the Building and Personal Property Coverage Form CP 0010:

**E. LOSS CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**6. Vacancy**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage, we will:

a. Not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

**(1)** Vandalism;

**(2)** Sprinkler leakage, unless you have protected the system against freezing;

**(3)** Building glass breakage;

**(4)** Water damage;

**(5)** Theft; or

**(6)** Attempted theft.

**b.** Reduce the amount we would otherwise pay for the loss or damage by 15%.

A building is vacant when it does not contain enough business personal property to conduct customary operations.

Buildings under construction are not considered vacant.

If the building was not vacant for 60 or more consecutive days prior to this loss, please forward documentation to support this.

Sincerely,

Dani McClelland, AIC, AINS
Field Claim Representative

300 EAST LANE STREET
P.O. BOX 2235
SHELBYVILLE, TENNESSEE 37162
PHONE: (931) 684-0205
FAX: (931) 684-8060

## GREGORY D. JUDKINS
## ATTORNEY AT LAW



# FACSIMILE TRANSMISSION

| | |
|---|---|
| **TO:** | **Ms. Dani McClelland, AIC, AINS**<br>**Field Claim Representative**<br>**Auto-Owners Insurance** |
| **FAX NO.:** | **(615) 661-4654** |
| **XC TO:** | **Joshua G. Offutt, Esq.** |
| **FAX NO.:** | **(615) 843-0310** |
| **TO:** | **Mr. James Farrar** |
| **FAX NO.:** | **(931) 684-5894** |
| **TO:** | **C. Kelly Wilson, Esq.** |
| **FAX NO.:** | **(931) 684-6442** |
| **DATE:** | **May 5, 2017** |
| **FROM:** | **Gregory D. Judkins, Esq.** |
| **FAX NO.:** | **(931) 685-0065** |
| **PHONE NO.:** | **(931) 684-4824** |
| **SUBJECT:** | **Claim No. 33-154-2014** |
| **MESSAGE:** | **Please see attached correspondence.** |

BEDFORD CO. CHANCERY CT.

2017 JUL -7 AM 8: 54

CURT M. COBB, C&M

BY: _____

# NUMBER OF PAGES, INCLUDING COVER PAGE: __2__

**\*\*\*\*The following document(s) will follow via U.S. Mail.\*\*\*\***



EXHIBIT
Collective
"D"

## NOTICE TO THE RECIPIENT

This telecopy is intended for the named recipient or his/her duly authorized agent only. If you are not the intended recipient and have received this in error, please contact sender immediately. The contents of this telecopy may be privileged and confidential, subject to all applicable legal protections and privileges. You are hereby notified that review, reproduction, or dissemination of these materials by unauthorized persons is strictly prohibited. The sender appreciates your prompt attention to this matter.

# Gregory D. Judkins

## Attorney at Law

**300 East Lane Street**
**P.O. Box 2235**
**Shelbyville, TN 37162**
Telephone (931) 684-0205     Facsimile (931) 684-8060
Email: gjudkins1@yahoo.com

May 5, 2017

*Via facsimile transmission to (615) 661-4654*
*w/U.S. Mail confirmation*
Ms. Dani McClelland, AIC, AINS
Field Claim Representative
Auto-Owners Insurance
5410 Virginia Way
P.O. Box 517
Brentwood, TN 37024-0517

| | | |
|---|---|---|
| RE: | Claimants: | **James Farrar, John H. Norton, III, and C. Kelly Wilson** |
| | Claim No.: | **33-154-2014** |
| | Date of Loss: | **January 7, 2014** |
| | Location of Loss: | **737 Madison Street, Shelbyville, TN** |

Dear Ms. McClelland:

Please be advised that I have been engaged to recommence efforts on behalf of your prior above-named insured to have Auto-Owners Insurance fulfill its contractual obligations under Policy Number 104619-03319303-13 to appropriately adjust and pay the above-referenced claim. As such, please receive this as a formal demand for your Company to pay this claim. Further, pursuant to *Tennessee Code Annotated* § 56-7-105, if this claim is not adjusted and paid within sixty (60) days of the date of this letter, I will be forced to refile the lawsuit against your Company on behalf of the insured and will therein assert and pursue a "bad faith" claim against your Company for the wrongful denial of coverage for their significant losses. As you should clearly be aware by this point, a "bad faith" claim entitles the policyholders to up to an additional 25% of the amount of the claim when an insurance carrier wrongfully and improperly denies a valid claim. This being so, if Auto-Owners Insurance decides to honor its contractual duties to assess and pay this claim, please advise as such as soon as possible.

Thank you for your attention to these matters.

Sincerely,

Gregory D. Judkins

GDJ/gdj

Xc:   Mr. James Farrar (vial facsimile transmission only to (931) 684-5894)

C. Kelly Wilson (vial facsimile transmission only to (931) 684-6442
Joshua G. Offutt, Esq. (vial facsimile transmission only to (615) 843-0310)

```
┌─────────────────────────────────────────┐
│   TRANSMISSION VERIFICATION REPORT        │
└─────────────────────────────────────────┘

                              TIME  : 05/05/2017 04:40PM
                              NAME  :
                              FAX   :
                              TEL   :
                              SER.# : U63088G4N820993
```

| | |
|---|---|
| DATE,TIME | 05/05  04:40PM |
| FAX NO./NAME | 16156614654 |
| DURATION | 00:00:48 |
| PAGE(S) | 02 |
| RESULT | OK |
| MODE | STANDARD |

201 Fourth Avenue North, Suite 1500
Nashville, TN 37219
(615) 843-0300
(615) 843-0310

**LeVan, Sprader, Patton, Plymire & Offutt**



| To: | Gregory Judkins | From: | Joshua G. Offutt |
|---|---|---|---|
| Fax: | 931-684-8060 | Pages: | 3 (including cover) |
| Phone: | | Date: | May 15th, 2017 |

Re:   James E. Farrar, Sr. , John H. Norton, III,

and C. Kelly Wilson

Claim No.: 33-154-2014, DOL: 01/07/2014

Loss Location: 737 Madison Street,

Shelbyville, TN

☐ **Urgent**     ☐ **For Review**     ☐ **Please Comment**     ☐ **Please Reply**     ☐ **Please Recycle**

Please see the attached correspondence from Mr. Offutt.

```
┌─────────────────────────────────────────┐
│  TRANSMISSION  VERIFICATION  REPORT       │
└─────────────────────────────────────────┘

                              TIME  : 05/05/2017 04:43PM
                              NAME  :
                              FAX   :
                              TEL   :
                              SER.# : U63088G4N820993

┌──────────────────────────────────────────────────────────────┐
│     DATE,TIME              05/05  04:42PM                       │
│     FAX NO./NAME           16158430310                          │
│     DURATION               00:00:33                             │
│     PAGE(S)                02                                   │
│     RESULT                 OK                                   │
│     MODE                   STANDARD                             │
│                            ECM                                  │
└──────────────────────────────────────────────────────────────┘
```

```
                    ┌─────────────────────────────────────────┐
                    │  TRANSMISSION VERIFICATION REPORT  │
                    └─────────────────────────────────────────┘

                                        TIME  : 05/05/2017 04:44PM
                                        NAME  :
                                        FAX   :
                                        TEL   :
                                        SER.# : U63088G4N820993

    ┌──────────────────────────────────────────────────────────────────────┐
    │                                                                        │
    │   DATE,TIME              05/05  04:44PM                                 │
    │   FAX NO./NAME           6845894                                        │
    │   DURATION               00:00:39                                       │
    │   PAGE(S)                02                                             │
    │   RESULT                 OK                                             │
    │   MODE                   STANDARD                                       │
    │                          ECM                                           │
    │                                                                        │
    └──────────────────────────────────────────────────────────────────────┘
```

```
          ┌─────────────────────────────────────────────┐
          │   TRANSMISSION VERIFICATION REPORT           │
          └─────────────────────────────────────────────┘

                              TIME  : 05/05/2017 04:45PM
                              NAME  :
                              FAX   :
                              TEL   :
                              SER.# : U63088G4N820993

┌──────────────────────────────────────────────────────────────────────┐
│                                                                        │
│      DATE,TIME               05/05  04:45PM                            │
│      FAX NO./NAME            6846442                                   │
│      DURATION                00:00:22                                  │
│      PAGE(S)                 02                                        │
│      RESULT                  OK                                        │
│      MODE                    STANDARD                                  │
│                              ECM                                       │
│                                                                        │
└──────────────────────────────────────────────────────────────────────┘
```

# LeVan, Sprader, Patton, Plymire & Offutt
### PLLC

MARK S. LeVAN*
PAUL L. SPRADER
C. BENTON PATTON
CYNTHIA D. PLYMIRE*
JOSHUA G. OFFUTT*
CHRISTOPHER M. JONES
JENNIFER P. OGLETREE
BRITNEY K. POPE

*Rule 31 Listed General Civil Mediator

201 FOURTH AVENUE NORTH
SUITE 1500
NASHVILLE, TENNESSEE 37219

TELEPHONE (615) 843-0300
FACSIMILE (615) 843-0310
JOFFUTT@LSPLAW.NET

Direct Fax: (615)679-4703

PARALEGALS
REINA E. MATHIS
JENNIFER A. ROOKER

May 11, 2017

**VIA FACSIMILE (931-684-8060)**
Gregory D. Judkins
300 East Lane Street
P.O. Box 2235
Shelbyville, TN 37162

Re:        **James E. Farrar, Sr., John H. Norton, III, and C. Kelly Wilson**
Claim No.:   33-154-2014
DOL:         January 7, 2014
Loss Location: 737 Madison Street, Shelbyville, TN

Dear Gregory:

    My firm has been hired to represent Auto-Owners with respect to the above-mentioned claim. Auto-Owners has concluded their investigation of this incident and has determined that no coverage is available for this loss under the policy. The determination of no coverage of this claim is due to the information that was gathered during the investigation and upon the lack of coverage described under the following policy provisions:

    E.    Loss Conditions

    ...

    6.    Vacancy

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage, we will:

    a. Not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

(1) Vandalism;

(2) Sprinkler leakage, unless you have protected the system against freezing;

(3) Building glass breakage;

(4) Water damage;

(5) Theft; or

(6) Attempted theft.

In this case, heat was not being maintained in the building and the building was vacant for greater than sixty (60) days. Therefore, there is not any coverage for this loss under the subject policy. Auto-Owners and myself have repeatedly previously requested any documentation to show that the building was being leased or that the heat was being maintained, however, Auto-Owners has never received any such documentation.

If you disagree with this assessment or if there is additional information you believe to be relevant to the question of coverage, please advise us of this information and forward any additional relevant information or documents that you believe we should review.

With kindest regards, I remain,

Very truly yours,

LeVAN, SPRADER, PATTON, PLYMIRE & OFFUTT

Joshua G. Offutt

JGO/jpo